**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CABLE NEWS NETWORK, INC.,<br>*Plaintiff*,<br>*v.*<br>PERPLEXITY AI, INC.,<br>*Defendant*. | No. 1:26-cv-04427-LAP |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS


Introduction ........................................ 1

Background ........................................ 3

I. Perplexity's Innovative Answer Engine ........................................ 3

II. The Complaint ........................................ 4

Legal Standard ........................................ 6

Argument ........................................ 6

I. The Complaint Does Not Plausibly Allege Direct Copyright Infringement by Perplexity for Perplexity's Answer Engine Outputs. ........................................ 6

II. The Complaint Alleges No Facts for Almost All Plaintiff's Copyrights........................................ 9

III. The Complaint Does Not Plausibly Allege Contributory Copyright Infringement. ........................................ 12

IV. The Complaint Does Not Plausibly Allege Vicarious Copyright Infringement. ........................................ 14

V. The Complaint Alleges No Plausible Trademark Claims. ........................................ 16

A. Perplexity's answer engine does not claim a false affiliation with CNN. ........................................ 16

B. Perplexity's references to CNN's marks are nominative fair use. ........................................ 17

C. The Complaint makes only conclusory allegations of dilution. ........................................ 19

Conclusion ........................................ 22

# TABLE OF AUTHORITIES

## CASES

*1-800 Contacts, Inc. v. JAND, Inc.*,
119 F.4th 234 (2d Cir. 2024) .......... 17, 21

*ABKCO Music, Inc. v. Sagan*,
50 F.4th 309 (2d Cir. 2022) .......... 7

*Arista Recs., LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) .......... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*In re AutoHop Litig.*,
No. 12-cv-4155, 2013 WL 5477495 (S.D.N.Y. Oct. 1, 2013) .......... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6, 16

*Cartoon Network LP v. CSC Holdings, Inc.*,
536 F.3d 121 (2d Cir. 2008) .......... 2, 7, 8

*Cengage Learning, Inc. v. Google LLC*,
786 F. Supp. 3d 611 (S.D.N.Y. 2025) .......... 14

*Chanel, Inc. v. RealReal, Inc.*,
449 F. Supp. 3d 422 (S.D.N.Y. 2020) .......... 18

*Cole v. John Wiley & Sons, Inc.*,
No. 11-cv-2090, 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) .......... 11

*Cox Communications, Inc. v. Sony Music Entertainment*,
146 S. Ct. 959 (2026) .......... 2, 5, 12, 13

*Dean v. Cameron*,
53 F. Supp. 3d 641 (S.D.N.Y. 2014) .......... 11

*Epidemic Sound, AB v. Meta Platforms, Inc.*,
No. 25-cv-10355, 2026 WL 2001154 (N.D. Cal. July 10, 2026) .......... 11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) .......... 6, 10

*Francis v. Kings Park Manor, Inc.*,
992 F.3d 67 (2d Cir. 2021) (en banc)....................................................................................... 6

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
146 S. Ct. 1391 (2026)............................................................................................................ 12

*Hines v. Roc-A-Fella Records, LLC,*
No. 19-cv-4587, 2020 WL 1888832 (S.D.N.Y. Apr. 16, 2020) ....................................... 10

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*,
73 F.3d 497 (2d Cir. 1996)...................................................................................................... 20

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*,
823 F.3d 153 (2d Cir. 2016)....................................................................................... 18, 19, 21

*JA Apparel Corp. v. Abboud*,
568 F.3d 390 (2d Cir. 2009)..................................................................................................... 22

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
599 U.S. 140 (2023)................................................................................................................. 20

*Lambertini v. Fain,*
No. 12-cv-3964, 2014 WL 4659266 (E.D.N.Y. Sept. 17, 2014) ............................... 10, 10

*Lopez v. Bonanza.com, Inc.*,
2019 WL 5199431 (S.D.N.Y. Sep. 30, 2019)........................................................... 7, 8, 9

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)........................................................................................................ 12, 13

*Ritani, LLC v. Aghjayan*,
880 F. Supp. 2d 425 (S.D.N.Y. 2012)................................................................................ 9, 10

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
93 F.4th 222 (4th Cir. 2024) ................................................................................................... 14

*Tiffany (NJ) Inc. v. eBay Inc.*,
600 F.3d 93 (2d Cir. 2010)..................................................................................... 18, 19, 20

*VIP Prods., LLC v. United States,*
No. 25-2027, 2026 WL 2237625 (9th Cir. Aug. 4, 2026) ............................................... 21

*Warner Bros. Ent. Inc. v. Random Tuesday, Inc.,*
No. 20-cv-2416, 2020 WL 12762735 (C.D. Cal. Nov. 9, 2020) ..................................... 10

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
403 F. Supp. 3d 361 (S.D.N.Y. 2019) .......... 18, 19

*White v. DistroKid, LLC*,
766 F. Supp. 3d 451 (S.D.N.Y. 2025) .......... 7, 9

*White v. DistroKid*,
738 F. Supp. 3d 387 (S.D.N.Y. 2024) .......... 14, 15

**STATUTES**

Title 15 U.S.C. § 1114 .......... 16, 21

Title 15 U.S.C. § 1125(c) .......... 16, 20

## INTRODUCTION

At the center of this case is Perplexity's "answer engine," a groundbreaking technology that transforms the way people seek and obtain information. Perplexity's tool efficiently and effectively answers users' questions by combining artificial intelligence with live internet search to provide fast, accurate, and verifiable answers. These sources include information published on the internet by Plaintiff Cable News Network, Inc. ("CNN"), along with information from hundreds of billions of other webpages. Perplexity's tool evaluates and synthesizes this data and automatically generates an easily understood, natural response to the user's question that incorporates facts from reliable internet sources and includes links to those sources so that users can navigate to the underlying information.

The answer engine is precisely the kind of transformative innovation that intellectual property law was designed to encourage and allow to flourish. CNN nevertheless alleges that Perplexity violates copyright and trademark law because, among other reasons, the outputs its answer engine automatically generates in response to user questions may incorporate information included in CNN's published stories. But CNN cannot copyright facts. And information on the public internet is not legally immune from synthesis, evaluation, and reincorporation into machine-generated answers to user questions. CNN's attempt to contend otherwise fails.

CNN's complaint raises copyright claims that it characterizes as "input" and "output" claims—claims related to Perplexity's alleged acquisition of CNN's copyrighted material and those related to the responses generated by Perplexity's answer engine in response to user questions. Perplexity looks forward to demonstrating on a full factual record why each of Plaintiff's claims fails. This motion, however, focuses on the output-related claims, as well as CNN's theories of secondary liability and its trademark claims. These claims lack the factual and legal basis to even get out of the starting gate and should be dismissed as a matter of law.

First, the claim that Perplexity is directly liable for copyright infringement for the outputs generated by its answer engine in response to user queries fails as a matter of law because the Complaint does not plausibly allege any volitional conduct by Perplexity. Second Circuit precedent is clear that mere ownership of a machine or process that automatically responds to a user's request does not suffice to hold the owner of the machine or process responsible for direct infringement. *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 131–33 (2d Cir. 2008) ("*Cablevision*"). Here, the Complaint's allegations concern user prompts to Perplexity's answer engine seeking to obtain information from CNN's reporting, but it is the prompts that start the inquiry process, and the machine-generated output depends on what the user asks—not on any action by Perplexity. The Complaint also fails to allege any facts of copying for all but a handful of Plaintiff's purportedly infringed works.

Second, the Complaint also does not allege facts that could establish Perplexity is liable for contributory or vicarious copyright infringement based on the answer engine's outputs. Under the Supreme Court's recent decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026), contributory liability may attach to a provider of a service only where that provider "affirmatively induced" users to commit infringement or "tailored" its services for infringement. The Complaint makes only conclusory and unsupported allegations of inducement and in fact provides use cases for Perplexity's transformative answer engine that disprove any "tailoring" for infringement. CNN's assertion of vicarious liability must also be dismissed because the Complaint does not adequately plead that Perplexity has a direct financial interest in any alleged infringement of CNN's works.

Finally, the Complaint's trademark infringement claims should be dismissed because the Complaint does not allege any facts showing Perplexity claims a false affiliation with Plaintiff's

marks, Perplexity's citations to Plaintiff's reporting are nominative fair use, and the Complaint makes only conclusory allegations of harm to Plaintiff's marks.

For these reasons, as set forth more fully below, this Court should dismiss CNN's output-related claims, its claims for contributory and vicarious liability, and its trademark claims.

## Background

### I. Perplexity's Innovative Answer Engine

Perplexity launched in 2022 with a simple mission: combine the power of artificial intelligence and the open internet to bring people high-quality, verifiable answers to their most important questions. The backbone of this effort is its transformative answer engine, an AI tool that combines large language models ("LLMs") with live web search. ¶¶2, 67.[1] "[W]hen you ask Perplexity a question, it uses advanced AI to search the internet in real-time, gathering insights from top-tier sources. It then distills this information into a clear, concise summary, delivering exactly what you need in an easy-to-understand, conversational tone." ¶2. Perplexity is not a traditional search engine that simply returns links to websites that may (or may not) contain relevant information; it is instead an answer engine that "support[s] people to come do their research directly." ¶58.

For Perplexity's answer engine to generate a response, the user must first supply a prompt—a set of instructions to Perplexity's answer engine that tell it what question the user would like it to answer, what sources it should consult, any procedural steps it should follow in answering the user's question, and the like. ¶¶54-55. The user's prompt drives the research, and Perplexity's answer engine responds with targeted, current information that answers the user's question.

[1] Citations to "¶_" refer to paragraphs of Plaintiff's Complaint, ECF No. 1.

After the user enters a prompt into the answer engine, the rest of the process occurs automatically. The answer engine interprets the user's prompt and uses retrieval-augmented generation ("RAG") to search a database of billions of webpages in real time to find relevant information. ¶¶54-55. Perplexity's answer engine then processes that information into a natural language response, complete with citations to the underlying sources. ¶54. Users can enter follow-up prompts to further refine the answer engine's research to fit their needs. ¶72.

While Perplexity's answer engine generates a "human-like language" response, no person is involved in the process after the user enters a prompt. ¶¶54-55. The output of this process depends not on human intervention but "on the size of the model, the diversity of training data, and the specific architecture and training techniques used." ¶52. To increase the scale of research or the number of prompts they can enter, among other things, users can upgrade to Perplexity's paid plans, including Perplexity Pro and Perplexity Max. *See, e.g.*, ¶¶5, 97.

## II. The Complaint

Plaintiff CNN is a "global 24-hour news organization that owns and operates numerous news networks and services, including the 24-hour CNN channel in the United States," as well as digital platforms such as CNN.com. ¶9. In May 2026, Plaintiff sued Perplexity for copyright and trademark infringement. The Complaint asserts five Counts: three copyright claims and two trademark claims. As noted above, the copyright claims are divided into two categories—those challenging "inputs," i.e., copies of content that are allegedly stored in databases or indexes used in Perplexity's answer generation process (Count I), and those challenging "outputs," i.e., the answer engine's automated responses to users' prompts (Counts II and III). While disputed by Perplexity, this motion does not seek dismissal at this stage of the "input" claims in Count I.

Count II alleges that Perplexity directly infringes CNN's copyrights by generating outputs that "contain and/or are derived from CNN's copyrighted content." ¶¶116-26. The Complaint

includes an Exhibit A containing thousands of purportedly copyrighted works, ECF No. 1-1, but the Complaint itself provides specific allegations for only seven of those works, ¶¶76, 79-81, 85, 87, 89, 92. For each example, the Complaint alleges that Perplexity directly infringes Plaintiff's copyrights in its answer engine responses. However, the Complaint alleges no intervening volitional act by any human between Plaintiff's goading prompt and Perplexity's automated answer engine response. Accordingly, as set forth more fully below, Count II fails to state a claim.

Count III alleges that Perplexity is secondarily liable for infringing outputs under theories of "contributory infringement by inducement and vicarious infringement." ¶¶127-33. To support this claim of contributory infringement, the Complaint alleges Perplexity's answer engine is "designed to foster the infringement of CNN's copyrighted works" and Perplexity "promotes itself as a service providing such content, inducing its users' direct infringement." ¶¶130-31. But its threadbare allegations are unsupported by any factual allegations of affirmative statements or acts by Perplexity encouraging its users to infringe Plaintiff's (or anyone's) works. And the Complaint admits Perplexity's answer engine supports many legitimate uses. These allegations are insufficient as a matter of law to plead contributory infringement by inducement under recent Supreme Court precedent. *See Cox*, 146 S. Ct. at 967. On vicarious infringement, the Complaint makes conclusory allegations that "Perplexity receives a direct financial benefit from the infringing activity," ¶133, but alleges no facts to support that claim either.

Count IV alleges trademark claims of false designation of origin and trademark dilution under the Lanham Act. ¶¶134-48. The false designation claim asserts that Perplexity uses CNN's mark "in a misleading manner, falsely claiming its outputs are sponsored by, endorsed or affiliated with CNN." ¶142. The Complaint alleges this use is likely to cause confusion because consumers will believe that "Perplexity's outputs are factually correct, complete, and authoritative because

they are sourced from, associated with, sponsored by, or approved by CNN." ¶145. With respect to dilution, the Complaint asserts that hallucinated or incomplete outputs attributed to CNN dilute its mark by blurring or tarnishment. ¶¶139-40, 144. But the Complaint fails to plausibly allege consumer confusion from Perplexity's accurate statements or nominative use of CNN's mark. And its claims of dilution are conclusory. Count V, which is duplicative of Count IV, fails for the same reasons.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Though courts must draw reasonable inferences from well-pleaded facts in the plaintiff's favor, they need not accept conclusory allegations as true. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc). Pleadings that offer only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I. The Complaint Does Not Plausibly Allege Direct Copyright Infringement by Perplexity for Perplexity's Answer Engine Outputs.

Plaintiff's claim for direct infringement fails because the Complaint does not plausibly allege that Perplexity engaged in any volitional conduct that caused the alleged copying. A claim for copyright infringement must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). For direct infringement, "copying" under the second element requires

"volitional conduct" that "causes the copying or distribution." *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022). As this Court has observed, "[t]he 'pivotal factor' in determining whether there was such a 'volitional act' is the 'initiation of the act of copying.'" *Lopez v. Bonanza.com, Inc.*, No. 17-cv-8493, 2019 WL 5199431, at *22 (S.D.N.Y. Sep. 30, 2019).

Providers of a service or machine that automatically creates copies of protected works at a user's request cannot be liable for direct infringement because they engage in no volitional act: merely providing a service or a machine does not "initiate" the act of copying. Only systems that do the same without a user request can be held directly liable. Under Second Circuit case law, "where a machine or system automatically undertakes actions that result in the unlawful copying of a copyrighted work, the mere ownership, construction, or supervision of the machine or system will not establish volitional conduct." *White v. DistroKid, LLC*, 766 F. Supp. 3d 451, 458 (S.D.N.Y. 2025). Rather, it is the user of that machine or system—"the person who actually presses the button to make the [copy]"—that "supplies the necessary element of volition." *Cablevision*, 536 F.3d at 131. The machine owner cannot be liable for direct infringement according to basic principles of causation and tort liability, which copyright law follows: but for the request asking for an infringing copy, the machine would not run and no output containing an infringing copy would be made. *See id.* at 132.

The Second Circuit's decision in *Cablevision* illustrates why Perplexity cannot, as a matter of law, be directly liable for copyright infringement based on its answer engine's outputs in response to user prompts for infringing copies. Cablevision offered a "Remote Storage DVR System" that allowed users to select and record content on Cablevision's servers and then request playback of that content on their home TVs. *Id.* at 124. Television providers alleged Cablevision's playback output was direct copyright infringement because Cablevision produced copies of their

programs during playback. *Id.* The Second Circuit disagreed, holding that Cablevision had not engaged in any volitional conduct required for direct infringement because Cablevision's users, not Cablevision, initiated the automatic playback of the television programs. The Second Circuit reasoned that "[i]n determining who actually 'makes' a copy, a significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct." *Id.* at 131. In other words, Cablevision's users initiated the act of copying because they "actually [pressed] the button to make the recording." *Id.*

Like in *Cablevision*, to the extent the Complaint alleges any copying of protected material here, the process is initiated by user requests for copies of that protected material, not Perplexity. Once a user inputs a prompt (which can select the sources to reference and specify procedural steps for the engine to take), Perplexity's answer engine automatically produces a response without any action or guidance from any Perplexity employee (or any other person). As the Complaint repeatedly admits, there is no output of Plaintiff's allegedly protected material without a user prompt requesting that material. *See, e.g.*, ¶92 (requesting "a CNN article"); ¶¶85-89 (requesting CNN articles by name). Because the outputs alleged to contain protected material were initiated and shaped by queries seeking that material, and not by Perplexity, Perplexity cannot be directly liable for copyright infringement based on that output. *See Lopez*, 2019 WL 5199431, at *22.

The analysis remains the same even if Perplexity, rather than the user, selects the source of the content that is available to inform the answer engine's responses. *Cablevision* rejected a similar argument. There Cablevision had "unfettered discretion in selecting the programming that it would make available for recording," but the Second Circuit held that content selection was not

"sufficiently proximate to the copying to displace the customer as the person who 'makes' the copies when determining liability under the Copyright Act." *Cablevision*, 536 F.3d at 132.

The automated response of Perplexity's answer engine in reaction to a user's prompt is the kind of conduct that this Court and other courts in this district routinely hold does not involve any volitional conduct and therefore cannot form the basis of a claim for direct copyright infringement. *See, e.g.*, *Lopez*, 2019 WL 5199431, at *22 ("mere ownership" of a website that allowed users to display copyrighted images did not satisfy volitional conduct requirement); *White*, 766 F. Supp. 3d at 461 ("[V]olitional conduct is not shown merely by alleging that a system copied, reformatted, or distributed copyrighted material" if "part of an automated process"); *In re AutoHop Litig.*, No. 12-cv-4155, 2013 WL 5477495, at *6 (S.D.N.Y. Oct. 1, 2013) ("[T]he pivotal factor in this Circuit for direct liability is initiation of the act of copying rather than the selection of offerings for possible copying or the creation of the technological structure."). Under *Cablevision* and these precedents, Perplexity cannot be liable for direct infringement for the allegedly infringing output.

## II. The Complaint Alleges No Facts for Almost All Plaintiff's Copyrights.

Plaintiff's output-related claims also fail because the Complaint does not adequately allege "copying" for over 99.9% of the works allegedly at issue. For all but seven works, the Complaint fails at the very first step of a copyright claim: identifying the protectable elements of the work and comparing them to the allegedly infringing output. To allege "copying" for copyright infringement, a plaintiff must assert that "(1) defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 441–42 (S.D.N.Y. 2012). To assess whether works are substantially similar, a court must be able to compare them; therefore, a complaint must plead facts regarding how the works are "'substantially similar,' including identifying the protectable elements of the works." *Id.*

Courts regularly dismiss claims of infringement where the complaint fails to identify the works and the elements of those works that were copied. For example, in *Lambertini v. Fain*, No. 12-cv-3964, 2014 WL 4659266 (E.D.N.Y. Sept. 17, 2014), the court dismissed copyright claims because the plaintiff pleaded "general, non-specific allegations" and failed to meet "the burden of identifying the specific works at issue in her pleading." *Id.* at 3-4. And in *Hines v. Roc-A-Fella Records, LLC*, No. 19-cv-4587, 2020 WL 1888832 (S.D.N.Y. Apr. 16, 2020), the court dismissed copyright claims for failing to identify what elements of plaintiff's song were infringed or what elements of the defendant's songs were infringing. "'[V]ague and general allegations of similarity' do not suffice." *Id.* at *4.

This comparison process is particularly important for news-reporting, which contains both copyrightable expression and non-copyrightable factual content. *See Feist Publ'ns*, 499 U.S. at 347–48 ("[F]acts—scientific, historical, biographical, and news of the day"—"may not be copyrighted and are part of the public domain available to every person."). A complaint must specify what *protectable* elements have been copied so the court can "extract the unprotectable elements from [its] consideration and ask whether the protectable elements, standing alone, are substantially similar." *Ritani*, 880 F. Supp. 2d at 442. Therefore, a "failure to plead facts … identifying the protectable elements of the works as part of its claim, will result in the dismissal of the copyright claim." *Id.*; *see, e.g.*, *Warner Bros. Ent. Inc. v. Random Tuesday, Inc.*, No. 20-cv-2416, 2020 WL 12762735, at *13 (C.D. Cal. Nov. 9, 2020) (only identifying one protectable element across many works "does not put Defendants on fair notice as to which elements might qualify as infringing").

The Complaint here does not allege facts related to nearly twenty thousand works. *See* Compl. Ex. A. The Complaint alleges infringement with specificity only for seven works, all under

registration number TX 9-574-794. *See* ¶¶76, 79, 81, 85, 87, 89, 92. For the thousands of remaining works supposedly copied by Perplexity under eight other registration numbers—the overwhelming majority of the allegedly infringed works—the Complaint alleges nothing about how Perplexity supposedly infringed Plaintiff's copyrights in even a conclusory fashion, nor does it identify any Perplexity outputs that are substantially similar. And the Complaint does not specify what protected elements are copied from CNN's news-reporting. Without such allegations, the Court cannot compare the purportedly infringing outputs and the infringed works.

From just a handful of examples, likely generated by Plaintiff itself, the Complaint asks that the Court infer that Perplexity's answer engine generated output containing copies of *virtually all* of CNN's works. ¶95. But the Complaint does not allege any facts to support that inference. It does not contend, for example, that the prompts CNN engineered for purposes of this litigation with the aim of copying CNN's works reflect how Perplexity's users typically design prompts and use its answer engine or that the answer engine returns infringing content in response to more generic prompts. Indeed, such a contention would not be plausible and ultimately would be contradicted by evidence. That Plaintiff's counsel could engineer purported copies of seven works simply does not support the leap that Perplexity users generated copies of the thousands of other claimed works. *See, e.g.*, *Dean v. Cameron*, 53 F. Supp. 3d 641, 647 (S.D.N.Y. 2014) ("[A] court must not 'aggregate' a plaintiff's work, but must consider each allegedly infringed work independently."); *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-2090, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012) (complaint cannot "base an infringement claim on overly-inclusive lists of copyrighted works"); *Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 25-cv-10355, 2026 WL 2001154, at *3 (N.D. Cal. July 10, 2026) (conclusory allegations that copies are uploaded to Meta's website are insufficient to plead copyright claims for 1,000 asserted works). Even if the Court

finds that Perplexity engaged in the requisite volitional conduct, it should dismiss CNN's output-related claims as to all but the seven works in the Complaint because CNN has alleged *no* facts, let alone plausible ones, supporting an infringement claim.

## III. The Complaint Does Not Plausibly Allege Contributory Copyright Infringement.

CNN's claim of contributory copyright infringement fails as a matter of law because the Complaint does not allege Perplexity had the requisite intent, as recently clarified by the Supreme Court in *Cox Communications*. To plead a claim of contributory copyright infringement, it is no longer sufficient to allege that the defendant "with knowledge of [a third party's] infringing activity, … materially contributes to the infringing conduct." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (emphasis omitted). Instead, the Supreme Court made clear in *Cox Communications* that the "provider of a service is contributorily liable for the user's infringement only if it intended that the provided service be used for infringement." 146 S. Ct. at 967. "[M]ere knowledge that a service will be used to infringe" or "failure to take affirmative steps to prevent infringement" are insufficient. *Id.* at 968 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939 n.12 (2005)). Rather, intent must be shown in one of two ways: (1) the defendant "affirmatively induced the infringement" or (2) the defendant "sold a service tailored to infringement." *Id.* at 964 (cleaned up). The Complaint plausibly alleges neither.

First, the Complaint fails to allege that Perplexity "affirmatively induced" any infringement of Plaintiff's protected works. A provider of a tool induces infringement only if it "actively encourages infringement through specific acts" such as promoting and marketing its product as a tool for infringement, or if the "principal object" of a tool's "business model[]" is infringement. *Id.* at 967. Encouragement of infringement "[m]ust be 'clear' to the relevant audience and 'affirmative,'" and inducement "cannot be based only on 'vague' language 'combined with speculation about how [others] may act.'" *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146

S. Ct. 1391, 1401 (2026). Only advertisements that expressly promote infringement qualify as inducement because otherwise copyright law would "trench[] on regular commerce." *Grokster*, 545 U.S. at 937.

The Complaint here does not plausibly allege that Perplexity clearly and affirmatively encourages users to infringe copyrighted works. As is common in advertising, Perplexity makes many promotional statements about its groundbreaking technology and transformative answer engine. For example, Perplexity told users they can "Skip the links" because Perplexity's answer engine "summarizes everything you need to know" across many sources in response to user prompts. *See* ¶¶3, 53-60, 133. The Complaint suggests that is a wink and a nod toward copyright infringement, but in reality, the statement does nothing more than tell users they do not have to do the work of reviewing and synthesizing factual information contained at the potentially millions of internet "links" that might bear on their question: Perplexity's answer engine does that hard work for them. The Complaint also points to the fact that Perplexity promotes its paid plans' "deeper sourcing." ¶5. But this too simply touts the value of Perplexity's research and does not encourage or promote infringement, let alone in any "clear" or "affirmative" language.

Second, the Complaint also does not plausibly allege that Perplexity's answer engine is "tailored to infringement." *Cox*, 146 S. Ct. at 964. A service is tailored to infringement "if it is 'not capable of substantial or commercially significant noninfringing uses.'" *Id.* at 967 (cleaned up). This means that infringement must be "either the most conspicuous use or the major use of the [defendant's] product." *Id.* A product is not "tailored to infringement" just because it *could* be used for infringement. Rather, a service provider is contributorily liable only if it designed its product to be used for infringement or if its product "is good for nothing else" but infringement. *Grokster*, 545 U.S. at 932.

The Complaint does not plausibly allege either. As the Complaint acknowledges, Perplexity is a research tool. ¶60. Its answer engine generates responses to user prompts for all kinds of information, including information not alleged to be copyrighted or not copyrightable at all, and the universe of potential outputs that a user's prompt may generate is limitless. The Complaint even points to a number of examples of user prompts that illustrate uses of Perplexity's answer engine that are plainly not designed to infringe on any protectable works. *See* ¶6 (response to the question "Can Perplexity help gather news?"); ¶53 (response offering information from five different websites); ¶97 (response to the question "What is Comet Plus?").

## IV. The Complaint Does Not Plausibly Allege Vicarious Copyright Infringement.

Similarly, the Complaint fails to allege a claim for vicarious liability because it neither pleads a direct connection between the alleged output infringement and financial benefit to Perplexity nor does it allege that users are "attracted to" Perplexity's answer engine because it enables infringement. To assert a claim for vicarious liability, a defendant must have "the right and ability to supervise" a third party's infringement and "an obvious and direct financial interest in the exploitation of copyrighted materials." *Cengage Learning, Inc. v. Google LLC*, 786 F. Supp. 3d 611, 621 (S.D.N.Y. 2025). Such a direct financial interest in the infringing activity requires "a causal relationship between the infringing activity and any financial benefit [the defendant] reaps." *White v. DistroKid*, 738 F. Supp. 3d 387, 400 (S.D.N.Y. 2024). This means that "the financial benefit to the defendant *must flow directly* from the third party's acts of infringement to establish vicarious liability." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 232 (4th Cir. 2024) (emphasis added), *rev'd on other grounds*, 146 S. Ct. 959 (2026). This can be shown in two ways: (1) revenue or financial benefit is directly tied to the sale of infringing goods; or (2) "users are attracted to a defendant's product because it enables infringement." *White*, 738 F. Supp. 3d at 402. The Complaint does not plausibly allege either.

First, the Complaint does not directly link users' purported infringement to Perplexity's revenue. As described above, users of Perplexity's answer engine drive the research process: they design their prompts based on their informational needs, and Perplexity's answer engine automatically generates responses to those prompts. Perplexity's revenue does not increase or decrease based on the output generated by user questions and whether it contains copyrighted material. As the Complaint describes, Perplexity offers paid plans that allow users to upload additional files, conduct more queries, and do research on a larger scale. ¶5. And Perplexity offers an API platform that provides up-to-date answers where users pay by the answer. ¶94. But even these enhanced features, and Perplexity's associated revenue from them, depend on the number and complexity of the user's questions, *not* on whether the answers generated in response to the user's prompt include any copyrighted material. Under the facts as alleged by the Complaint, no financial benefit is tied directly to the alleged infringement. *See White*, 738 F. Supp. 3d at 402 (no vicarious infringement where "monthly payments do not increase or decrease based on whether the user uploads infringing or non-infringing products").

Second, the Complaint does not plausibly allege that users are "attracted to" Perplexity's answer engine because it enables users to infringe copyrighted materials. The Complaint instead alleges that Perplexity advertises its product as an "answer engine" that generates "a clear, concise summary" of the information that the user requested. ¶2. The Complaint also alleges that "Perplexity purports to save users' time and energy" by doing this research for them. ¶2. And users can "Skip the links" to save even more time. ¶3. None of these allegations support the massive inferential leap from "saving time" to enabling copyright infringement. *See supra* at 13. Nowhere does the Complaint plausibly allege that users turn to Perplexity's transformative answer engine so that they can copy Plaintiff's, or anyone else's, protected works. The same is true for

Perplexity's paid features. The Complaint alleges that Perplexity advertises its paid services as offering "deeper sourcing," "deep research," and "search[es] across the web, team files, and work apps." ¶5. But the ability to do "deep research" does not mean that users are drawn to Perplexity to infringe Plaintiff's material. The Complaint's allegations are far too conclusory and the actual facts alleged have "obvious alternative explanation[s]," such as the inference that users use Perplexity exactly as advertised—to summarize dense information and save time and effort. *Twombly*, 550 U.S. at 567. Plaintiff's vicarious liability claim should accordingly be dismissed.

**V. The Complaint Alleges No Plausible Trademark Claims.**

In Counts IV and V, CNN pleads three trademark violations under the Lanham Act. First, the Complaint alleges that Perplexity's answer engine produces outputs that inaccurately claim that Plaintiff participates in Comet Plus and thereby creates a false affiliation with Plaintiff's marks under 15 U.S.C. §§ 1114(1)(a) and 1125(a)(1). Second, the Complaint alleges that Perplexity's outputs that accurately depict Plaintiff's content and reference Plaintiff as the source of information infringe on Plaintiff's marks under 15 U.S.C. §§ 1114 and 1125(a)(1). Third, the Complaint alleges that Perplexity attributes incorrect or hallucinated information in its outputs to Plaintiff, thus diluting Plaintiff's trademarks under 15 U.S.C. § 1125(c). None of these allegations states a viable trademark claim. The alleged outputs about Comet Plus are accurate, citations to Plaintiff as the source of information constitute nominative fair use, and the Complaint's allegations of dilution are too conclusory to survive a motion to dismiss.

**A. Perplexity's answer engine does not claim a false affiliation with CNN.**

The Complaint's first claim of trademark infringement fails because the Complaint does not plausibly allege that Perplexity has claimed any false affiliation with CNN or that consumers were likely to be confused about such an affiliation. To state a claim for trademark infringement, "the plaintiff must show … that the defendant's 'use in commerce' of the allegedly infringing mark

would 'likely cause confusion' as to the origin, sponsorship, or affiliation of the defendant's goods with plaintiff's goods." *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 246 (2d Cir. 2024). The "crucial issue" is whether there is a likelihood that "an appreciable number of ordinarily prudent purchasers" are likely to be misled or confused. *Id.* at 248.

The Complaint identifies no statement or conduct by Perplexity that would lead an ordinary consumer to believe that CNN sponsored, approved, or was otherwise affiliated with Perplexity's answer engine outputs. The Complaint alleges only one instance of Perplexity's answer engine referencing an affiliation between Comet Plus and CNN. When prompted with the question "What is Comet Plus?," the answer engine responded that Comet Plus users "get a premium news bundle similar in spirit to Apple News Plus, with outlets such as CNN, Fortune, The Washington Post, Condé Nast titles, Le Monde and others participating as launch partners." ¶97. Even assuming the reference is relevant, this single mention of CNN is no "false affiliation" because it is accurate: the Complaint admits that CNN participated as a Comet Plus launch partner. *See* Compl. ¶46 ("CNN and Perplexity negotiated a term sheet effective October 1, 2025, for a CNN - Perplexity Comet Plus Partnership"). Although the parties later terminated the agreement, CNN was nevertheless a Comet Plus launch partner, which is all the answer engine stated. ¶¶47, 97. The Complaint's allegation that Perplexity "falsely claim[s] that its users can get access to CNN's premium content" is therefore conclusory and unsupported by the Complaint's own allegations. Because the Complaint does not plausibly allege any false affiliation, the Court should dismiss Plaintiff's trademark claims based on a false affiliation for Counts IV and V.

### B. Perplexity's references to CNN's marks are nominative fair use.

The Complaint's second claim of trademark infringement—that outputs of Perplexity's answer engine reference CNN as the source of information infringe CNN's mark—fails because the outputs' references to Plaintiff constitute nominative fair use. *See* ¶¶76, 79, 81, 85, 87, 89, 92.

"The doctrine of nominative fair use allows a defendant to use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of the defendant's product or the mark-holder's sponsorship or affiliation." *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 165 (2d Cir. 2016) (quoting *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010)). "This has been dubbed a non-confusing 'nominative use' because it 'names' the real owner of the mark." 3 J. McCarthy, Trademarks and Unfair Competition § 23:11 (5th ed. 2023). Because nominative fair use is not an affirmative defense, Plaintiff bears the "burden to plead sufficient factual content to plausibly allege why Defendant's use of its trademarks is not permissible under the nominative fair use doctrine." *Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 437 n.15 (S.D.N.Y. 2020). Courts in this Circuit regularly dismiss trademark claims where the complaint fails to plausibly allege consumer confusion from the defendant's nominative use of the plaintiff's mark. *See, e.g.*, *id.* at 438-40 (dismissing trademark claims where Chanel failed to allege that the defendant used the Chanel marks other than to identify Chanel as the source of the products); *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 377–80 (S.D.N.Y. 2019) (dismissing trademark claims where "a reasonable consumer encountering the ads would not perceive them to claim that Weight Watchers is the source of Noom's services, or that Weight Watchers is affiliated with or endorses Noom").

To determine whether a defendant's nominative use creates a likelihood of consumer confusion, the Second Circuit instructs courts to consider eleven factors: the eight *Polaroid* factors for assessing the likelihood of confusion[2] and three additional factors specific to nominative fair

[2] The *Polaroid* factors are: "(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product;

use. Those additional factors are whether: (1) "the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service;" (2) "the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service;" and (3) "the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder." *Int'l Info. Sys.*, 823 F.3d at 168.

Perplexity's use of Plaintiff's mark satisfies each of the three nominative fair use factors. First, Perplexity's answer engine provides links for the sources of its answers. The answer engine could not cite a CNN article without using the CNN mark. *See Weight Watchers*, 403 F. Supp. 3d at 380 ("It would not be possible to refer to Weight Watchers without its mark—the name 'Weight Watchers' itself."). Second, Perplexity uses no more of the CNN mark than necessary; the mark appears as a small link following a fact to identify the source of the information. *See, e.g.*, ¶79. Third, Perplexity does not falsely suggest CNN endorses or sponsors its answers. As set forth above, the Complaint's conclusory allegations of false affiliation are insufficient, and the Complaint's only example fails to provide any support. Because this is a quintessential nominative use—using "cnn" to refer to a CNN article—the Complaint does not plausibly allege a likelihood of consumer confusion as to source, affiliation, sponsorship, or endorsement. *See Int'l Info. Sys.*, 823 F.3d at 169.

### C. The Complaint makes only conclusory allegations of dilution.

CNN's dilution claim fares no better. Dilution by tarnishment requires an "association arising from the similarity between" two marks that "harms the reputation of the famous mark."[3]

(5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Int'l Info. Sys.*, 823 F.3d at 165.

[3] The Complaint uses the word "blurring," but its factual allegations sound primarily in dilution by tarnishment. *See* ¶¶99-100, 103, 139. In any event, the Complaint does not state a claim for blurring. "'Dilution by blurring' is an 'association arising from the similarity between a mark or

15 U.S.C. § 1125(c)(2)(C); *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 147 (2023). It "arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." *Tiffany*, 600 F.3d at 111. Though a tarnishment claim does not require "actual or likely confusion," it does require that the association is likely to harm the reputation of the famous mark. 15 U.S.C. § 1125(c).

The Complaint does not plausibly allege a likelihood of harm to CNN's mark. The Complaint identifies only one example of Perplexity's answer engine producing "nonsensical statements" in response to a prompt requesting "quotes attributed to Mikel Arteta, the manager of the Arsenal soccer team." ¶99. That isolated example does not plausibly show that Perplexity's citations to CNN, in what appears to be a technical malfunction, would likely harm CNN's reputation. A reasonable user encountering this glitch would not think CNN was claiming that Arteta made such nonsensical statements. Moreover, the excerpt shows that Perplexity's answer engine expressly cautioned that the quotes "appear[ed] to be garbled or mistranscribed," that the user should not infer that "CNN [was] making fun of" Arteta, and that the user should not conclude CNN was incompetent based on what appeared to be a discrete "sourcing or transcription failure." ¶99. If the "sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use," the answer engine's defense of CNN makes that finding implausible. *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996).

---

trade name and a famous mark that impairs the distinctiveness of the famous mark.'" *Tiffany*, 600 F.3d at 111 (identifying "classic examples of blurring" as hypothetical anomalies like Dupont shoes and Buick aspirin tablets). It is plain that Perplexity's answer engine uses the CNN mark to refer to CNN. This reference does not make CNN's mark any less distinct, and the Complaint offers only conclusory allegations to the contrary.

The Complaint otherwise makes only conclusory allegations of harm to Plaintiff's marks. The Complaint asserts "Perplexity's use of CNN's mark in this manner … causes serious damage to its worldwide reputation for truth and accuracy in reporting." ¶100. But the Court need not accept that conclusion as true. The Complaint identifies no other examples of alleged hallucinations, and in the single instance identified, the answer engine disclaims any reliance on the mistranscription. Because the Complaint's only example is implausible and the Complaint pleads no facts about consumers misattributing incorrect content to CNN, the Court is left to speculate as to whether CNN's brand has been harmed. That is insufficient to state a claim, so CNN's dilution claim should be dismissed.

For the same reason, the Complaint does not plausibly allege a trademark infringement claim under 15 U.S.C. §§ 1114 or 1125(a)(1) based on this alleged hallucination. The Complaint provides only conclusory allegations of consumer confusion from this citation to CNN. *See 1-800 Contacts*, 119 F.4th at 248.

Finally, even if CNN had pleaded viable trademark claims, the Complaint must still plead facts supporting infringement as to each mark for which it seeks relief. Exhibit B to the Complaint identifies over a dozen registered marks. ECF No. 1-2. But the Complaint includes no factual allegations concerning Perplexity's use of most of those marks, including "CITIZEN BY CNN," "WATCH CNN," "CNN" with a superscript tilde, "CNN SANS," "CNN NEWSOURCE," "CNN HEROES," "CNN FILMS," or "CNN COLLECTION." Without allegations that Perplexity used those marks in commerce, Perplexity cannot reasonably be expected to defend against claims based on those marks—particularly where the *Polaroid* factors consider the "similarity of the marks" and "actual consumer confusion," *Int'l Info. Sys.*, 823 F.3d at 165, which must be evaluated mark by mark, *see VIP Prods., LLC v. United States*, No. 25-2027, 2026 WL 2237625, at *6 (9th

Cir. Aug. 4, 2026). Many of CNN's purportedly infringed marks are used in entirely different contexts than news-reporting: "CITIZEN BY CNN" is used for "an annual in-person business forum," and "CNN SANS" is used for "[d]ownloadable printing fonts." ECF No. 1-2. The same deficiency applies to CNN's dilution claims, which are subject to statutory exclusions for "fair use, including a nominative or descriptive fair use," "forms of news reporting and news commentary," and "noncommercial use of a mark." 15 U.S.C. § 1125(c)(3). Absent factual allegations identifying how Perplexity used each mark, it is impossible to assess whether those exclusions or other defenses apply. *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 403 (2d Cir. 2009) ("[R]esolution of a fair-use defense requires the court to focus on the defendant's (actual or proposed) use."). Any trademark claim the Court permits to proceed should be limited to the marks for which CNN has actually identified alleged infringing uses.

## CONCLUSION

For these reasons, Perplexity respectfully requests that the Court dismiss Counts II through V of the Complaint for failure to state a claim.

Dated: August 21, 2026
New York, New York

*/s/ John C. Quinn*
John C. Quinn
Tyler Rhoads
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
jquinn@heckerfink.com
trhoads@heckerfink.com

Trisha Anderson*
Jason Petty*
HECKER FINK LLP
1050 K Street NW, 10th Floor
Washington, D.C. 20001
(212) 763-0883
tanderson@heckerfink.com
jpetty@heckerfink.com

*Counsel for Defendant Perplexity AI, Inc.*

* Application for admission pro hac vice is pending.

**CERTIFICATION OF WORD COUNT**

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Rule 2.B. of the Court's Individual Rules of Practice in Civil Cases because it contains 6,996 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count. This memorandum of law also complies with the applicable formatting rules regarding 12-point font and double-spaced text.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.

Dated: August 21, 2026

*/s/ John C. Quinn*
John C. Quinn